Russell L. DAVIS, Petitioner/Appellant,

v.

STATE of Tennessee,
Respondent/Appellee.

Supreme Court of Tennessee.

Nov. 15, 1995.

Larry H. Nance, Memphis, for Appellant.

Charles W. Burson, Attorney General and Reporter, Christina S. Shevalier, Assistant Atty. Gen., Nashville, for Appellee.

## OPINION

SAMUEL L. LEWIS, Special Justice.

This is an appeal by the defendant/appellant Russell L. Davis from the denial of his Petition for Post–Conviction Relief. Appellant is presently serving sentences of confinement for life, twenty years and fifteen years for convictions of aggravated kidnapping, rape and robbery, and ten years for voluntary manslaughter.

The appellant's convictions grew out of two separate episodes. The episodes that form the basis of the conviction of aggravated kidnapping, rape and robbery are referred to as the "rape" case. The second episode, which resulted in a conviction for voluntary manslaughter, is referred to as the "homicide" case.

The appellant has presented the following issues for review:

A. Whether the Trial Court erred in denying to the Appellant expert assistance to enable an analysis of existing evidence to establish the prejudice which he suffered by the failure or refusal of previous counsel to perform their duties.

B. Whether the burden placed on the Appellant to establish prejudice was met by the evidence contained in the record, and, if not, whether the placement of such a burden on the post-conviction Petitioner must be rescinded and replaced with a more reasonable standard.

C. Whether the evidence contained in the record preponderates against the Trial Court's finding of fact that the Appellant was afforded the effective assistance of counsel, Michael Long, and appellate counsel, Walker Gwinn, in the preparation, trial and appeal of the "rape" case when the evidence demonstrates the following acts or omissions of trial and appellate counsel:

1. failure to obtain the assistance of an expert to analyze and present countervailing serological evidence, including the performance of tests on the bodily fluids of the Appellant;

2. failure to consult with an expert to determine the fallacies of the expert proof offered by the State;

3. failure to adequately pursue Motions for Suppression of the Appellant's statement, and the search and seizure of physical evidence;

4. failure to pursue and obtain available evidence to discredit the testimony of the victim in the "rape" case, including her description of the vehicle used in the commission of the offense;

5. failure to turn over his complete file to the Appellant after the termination of his employment;

6. failure to contact, interview and obtain the testimony of witnesses, including the principal of a junior high school, Teresa Ann Gholston, Nyanza Bonner, Michael Harris[,] Jesse Mitchell, and Arthur Scruggs;

7. failure to interview defense witnesses prior to their testimony;

8. failure to adequately challenge the testimony of a serologist as to the probability of the Appellant's guilt, by prior interview of the witnesses and countervailing evidence;

9. failure to learn of an opening of sealed evidence—the rape kit, in contradiction to the testimony at trial;

10. failure to investigate information received that the boyfriend of the alleged victim, James Burks, owned a light blue truck, to show the victim's familiarity with Ford trucks;

11. failure to interview witnesses who would contradict the victim's statements of the Appellant's condition after being specifically asked to do so;

12. failure to investigate other discrepancies;

13. failure to renew a Motion for Judgment of Acquittal at the close of all proof;

14. eliciting unfavorable testimony from defense witnesses and confusing the witnesses;

15. failure to prevent the introduction of remote arrests and convictions and failure to ask for a hearing outside the presence of the jury to determine the admissibility of the arrests or convictions;

16. failure to move to strike inadmissible evidence regarding prior arrests which was admitted for lack of a contemporaneous objection;

17. failure to request jury instructions on the consideration of prior convictions and the defense of alibi;

18. failure to discover and ascertain which previous convictions would be admissible which resulted in improper advice to the Appellant concerning his answers to questions about his criminal record and which further resulted in the divulging by the attorney to the jury during voir dire, information about a record which was inadmissible;

19. failure to consult with and assist successor appellate counsel to insure a correct transcript; and

20. failure to attempt to plea bargain; and

21. failure of appellate counsel, Walker Gwinn, to consult with trial counsel, to verify the accuracy of the transcript, and to raise some of the pertinent grounds on appeal which were included in the original and amended post-conviction motions.

D. Whether the evidence in the record preponderates against the Trial Court's Findings of Fact that the Appellant was afforded the effective assistance of counsel[,] Michael Long, and subsequent counsel, Edward Chandler, in the preparation and trial of the "homicide" case when the evidence demonstrates the following acts or omissions of counsel:

1. failure of Attorney Michael Long, to file and properly present a Motion to Suppress Evidence which had been obtained by illegal searches of the Appellant's premises and property and which was suspiciously handled by the police department;

2. failure of both attorneys to attempt to interview witnesses who were police officers and other witnesses to uncover discrepancies;

3. failure of Attorney Edward Chandler to do the following acts:

(a) to familiarize himself with the suppression efforts of his predecessor counsel and to properly pursue a presentation of the suppression issues by seeking a waiver of the time requirements of the local rules of Court;

(b) to obtain serological analysis after repeated requests to do so by the Appellant;

(c) to object upon a proper ground to the introduction of inadmissible evidence, which supplied a vital element of the prosecution's proof, resulting in a waiver of the ground;

(d) to cross-examine the daughter of the victim regarding discrepancies in her testimony;

(e) to obtain the return of seized evidence—a book of receipts and appointments—to support his defense of alibi;

(f) to prevent the introduction of an alleged oral statement of the defendant;

(g) to obtain complete discovery and present evidence of witnesses to an event where a person, with a photograph of the deceased, made inquiries

of the victim's whereabouts prior to her death;

(h) to interview and present a witness, Walter Kimbrough, who had seen a skulking person on the night the victim disappeared;

(i) to investigate the "secretor" characteristic of the victim so that false testimony would not be introduced;

(j) to object to hearsay when the declarant had not been interviewed;

(k) to interview the latent fingerprint examiner;

(l) to request an independent charge as to included offenses;

(m) to obtain appellate review since he waived on the appeal the prosecutor's use of the phrase "let it be explained" in argument since same was a commentary on the failure to testify by the defendant;

(n) to locate the missing page of the autopsy report; and

(o) to attempt to plea bargain.

The appellant filed two petitions for post-conviction relief. The petitions pertain to two separate trials for two separate alleged criminal episodes.

(1) The "rape" case:

Appellant filed his first petition in December 1988. It concerned convictions for kidnapping, rape and robbery. Attorney Michael Long represented appellant from shortly after his arrest through the trial of the cases. On appeal, Attorney Walker Gwinn represented appellant.

The offense occurred in November 1985, and appellant was arrested on 5 January 1986. He has been in custody since that time.

The appellant's wife hired attorney Long to represent appellant on or about 8 January 1986. Mr. Long represented the appellant until his conviction in the rape case. Later, the trial court appointed other counsel, Walker Gwinn, who represented the appellant through the denial of the appeal by the Court of Criminal Appeals.

(2) The "homicide" case:

Appellant filed his second Petition for Post–Conviction Relief in April 1989. It concerned a conviction for voluntary manslaughter.

The homicide case concerned the killing of a person between 24 November 1985 and 28 December 1985. Officials charged appellant with this offense after his arrest in the "rape" case. Mr. Long initially represented appellant, but after appellant's conviction in the rape case, he hired another attorney, Edward Whit Chandler, in July 1986. After the conviction in the homicide case, Mr. Chandler appealed to the Court of Criminal Appeals.

(3) Post–Conviction Proceedings:

Counsel in the instant case was appointed on 29 September 1989.

On 17 November 1989, appellant filed a motion to "secure scientific analysis of evidence and comparison" in the rape case. The trial court overruled this motion. Appellant then filed a motion for recusal of the trial judge which was granted. Next, appellant filed an additional amendment to his second petition on 21 June 1991. He filed repeated motions regarding expert scientific proof. The trial court held the motions in abeyance pending an evidentiary hearing. Thereafter, the trial court conducted evidentiary hearings on the motions regarding the scientific proof. Subsequently, appellant filed another motion to "secure scientific analysis of petitioner's bodily fluids" on 4 October 1992. Appellant alleges that he sought this analysis at his own expense. This we will discuss infra. The trial court held the final evidentiary hearing in this case on 5 March 1992.

On 8 December 1992 the trial court filed its findings of fact and conclusions of law, denying appellant's Petition for Post–Conviction Relief. The appellant then filed his Notice of Appeal in January 1993 in each of the cases. Subsequently, the Court of Criminal Appeals affirmed the action of the trial court. Appellant then filed an Application for Permission to Appeal which this court granted in July 1994.

We first discuss appellant's issue regarding the trial court's denial of his motion for expert assistance at the post-conviction level.

■ It is the appellant's contention that the trial court erred by denying his motion for expert assistance at the post-conviction level. He insists that the decision unconstitutionally denied him the use of an expert both at state expense and at his own expense.

Following our review of this record, we are of the opinion that these claims are without merit.

Petitioner did not request permission from the trial court for an expert at his own expense. The opinion of the Court of Criminal Appeals, which is supported by the record, states:

The record in this case does not support the statement that the appellant could or was willing to pay for the extraction and testing he desired. The "motion to secure scientific analysis of evidence and comparison" states in part: "That all of the above testing be done at the *expense of the State of Tennessee,* or, alternatively, that he be allowed to expend the sums for same, to be *reimbursed by the State.*" The "motion for advance of expenses to obtain expert testimony" requested that the trial court order the Executive Secretary of the Supreme Court to advance fees and travel expenses to an expert witness of the appellant's choosing. The motion states in part: "The Petitioner is unable to bear the expenses for the requested matter by other resources." As can be seen, the appellant was not willing to pay the expense that he wanted to incur. To the contrary, he sought the entry of an order requiring the State of Tennessee to pay all of these expenses.

*Davis v. State,* No. 02–C–01–9307–CR00132, 1994 WL 90490 (Tenn.Crim.App., Jackson, 23 Mar. 1994) (alteration in original).

Our review of this record supports the Court of Criminal Appeals' finding. Despite the petitioner's assertion to the contrary, this case does not present the issue of whether post-conviction petitioners can be denied the assistance of experts at their own expense.

Instead, the issue is whether non-capital post-conviction petitioners are entitled to expert support services at state expense.

■ In Tennessee there is no rule or statute that entitles a non-capital post-conviction petitioner to state funded expert assistance. *See, i.e., Owens v. State* 908 S.W.2d 923 (1995); Tenn.Code Ann. § 40–14–207(b) (1990 and Supp.1994).

If a non-capital post-conviction petitioner has such a right it is of constitutional origin.

■ A look at the analysis utilized by the United States Supreme Court in determining the extent of process indigent post-conviction petitioners must be accorded is instructive in resolving this issue. The proper starting point is to note that post-conviction procedures are not constitutionally required. *Case v. Nebraska,* 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965). However, once a state chooses to provide post-conviction remedies, it must do so in a manner that meets Constitutional standards. *See Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). In *Finley,* the Supreme Court held that the fundamental rights as mandated by the Due Process Clause do not require states to supply a lawyer in the post-conviction context. *Id.* at 556–57, 107 S.Ct. at 1994. *Finley* was based on the Court's holding in *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) that the right to appointed counsel extends to the first appeal as of right and no further. This dichotomy between the stages of a criminal proceeding with trial and direct appeal as of right on one side and discretionary appeals and collateral attacks on the other is based upon the change in position of the parties. Once the defendant becomes the one initiating the legal proceeding, the Constitutional considerations are different.

It is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilt made by a judge or a jury below. The defendant needs an attorney on appeal not as a shield to protect him against being "haled into court" by the State and stripped of his presump-

tion of innocence, but rather as a sword to upset the prior determination of guilt. *Ross,* 417 U.S. at 610–11, 94 S.Ct. at 2444.

■ This distinction is consistent with prior opinions of the Supreme Court. See *Barefoot v. Estelle,* 463 U.S. 880, 887, 103 S.Ct. 3383, 3391, 77 L.Ed.2d 1090, 1100 (1983) in which the Supreme Court observed that direct appeal is the primary avenue for review of a conviction and sentence. Once the process goes beyond the trial and direct appeal as of right stage, the state has no duty to "duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction." *Ross,* 417 U.S. at 616, 94 S.Ct. at 2447. A person's right to counsel ends at the conclusion of the first stage of direct appeal. Therefore, the *Ross* considerations apply with more force to post-conviction review. *Finley,* 481 U.S. at 556–57, 107 S.Ct. at 1994. The Court logically reasoned that, "since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction [he certainly] has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process." *Id.* at 555, 107 S.Ct. at 1993. For the Constitution to require support services for indigent post-conviction petitioners but not to require counsel makes no sense whatsoever. In the absence of a Constitutional right to counsel, there can be no Constitutional right to support services at state expense.[1]

■ While this court is always the final arbitrator of the Tennessee Constitution and is free to expand the minimum level of protection mandated by the Federal Constitution, this court noted in *Burford v. State,* 845 S.W.2d 204, 207 (Tenn.1992) that it has long been its practice to construe Article I, Section VIII of the Tennessee Constitution synonymously with the 5th and 14th Amendments of the United States Constitution. *See also State v. Black,* 815 S.W.2d 166, 187–88 (Tenn.1991) (a case in which this court held an analysis of Article I, Section 16 does not yield results different from those reached by the U.S. Supreme Court on parallel provisions of the 8th Amendment). The standards of due process followed by the federal courts are sufficient to protect the rights of indigent non-capital post-conviction petitioners in Tennessee.

■ The Tennessee Constitution does not contain an express equal protection clause. Nevertheless, this court has construed an equal protection provision from Article I, Section 8 and Article XI, Section 8 of the state constitution. *Marion County River Trans. Co. v. Stokes,* 173 Tenn. 347, 349, 117 S.W.2d 740, 741 (Tenn.1938). While we are at liberty to expand on minimum federal protection, we have consistently held that the state equal protection guarantee is co-extensive with the equal protection provisions of the 5th and 14th Amendments of the United States Constitution. *Tenn. Small School Systems v. McWherter,* 851 S.W.2d 139, 152 (Tenn.1993) ("the equal protection provisions of the Tennessee Constitution and the Fourteenth Amendment are historically and linguistically distinct" but "confer essentially the same protection upon the individuals subject to those provisions."); *see also Doe v. Norris,* 751 S.W.2d 834, 841 (Tenn.1988). Just as in the due process context, there is no textual reason to interpret Tennessee's equal protection provisions differently than the United States Supreme Court's interpretation of the 5th and 14th Amendments. The United States Supreme Court has held that the Equal Protection Clause does not require absolute equality or precisely equal advantages. *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 24, 93 S.Ct. 1278, 1291, 36 L.Ed.2d 16, 37 (1973). The Equal Protection Clause does not require states to "equalize economic conditions." *Griffin v. Illinois,* 351 U.S. 12, 23, 76 S.Ct. 585, 592, 100 L.Ed. 891, 901 (1956) (Frankfurter, J., concurring).

■ After careful consideration of the cases and constitutional provisions, this court is of the opinion that the state is not required

---

1. In this case, we need not decide whether capital post-conviction petitioners have a right under either the state or federal constitution to state funded expert assistance. We expressly reserve decision on that constitutional question until it is squarely presented.

to provide expert assistance to indigent non-capital post-conviction petitioners.

■ We next discuss the appellant's issue of: "Whether he was properly required to establish prejudice in order to obtain relief on his post-conviction petition."

Petitioner argues the requirement that a post-conviction petitioner demonstrate prejudice in order to obtain relief is too onerous and should be "rescinded" for a "more reasonable standard."

We find no merit to this contention.

The United States Supreme Court set the standard for establishing a claim for the ineffective assistance of counsel in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "First, the defendant must show that counsel's performance was deficient [in that counsel] made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. "Second, the defendant must show that the deficient performance prejudiced [him, in that the] errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

■ The *Strickland* standard applies to the similar right to counsel provisions of the Tennessee Constitution. *State v. Melson,* 772 S.W.2d 417, 419 (Tenn.), *cert. denied,* 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989). Petitioner need not demonstrate prejudice when he is completely deprived of the right to counsel; however, petitioner has not presented a claim which would constitute such deprivation. *See Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 696 (1984).

We next discuss the appellant's issue of whether the evidence in the record preponderates against the trial court's findings of fact that the appellant was afforded the effective assistance of counsel. The alleged acts or omissions which amounted to ineffective assistance of counsel according to the appellant are set out supra.

■ As discussed previously, the United States Supreme Court has examined in detail the 6th Amendment requirement of effective assistance of counsel in criminal cases. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel "the defendant must show that counsel's performance was deficient [in that counsel] made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. A court reviewing this issue must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. Second, the petitioner must show that counsel's performance prejudiced petitioner in that the errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064.

■ The petitioner must show that there is a "reasonable probability" that but for counsel's deficient performance "the result of the proceeding would have been different. A reasonable probability is [one] sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. This same standard applies to the similar right to counsel provisions in the Tennessee Constitution. *State v. Melson,* 772 S.W.2d 417, 419 (Tenn.1989).

■ In a post-conviction relief proceeding, the burden is generally on the petitioner to prove by a preponderance of the evidence the allegations in the petition. *State v. Kerley,* 820 S.W.2d 753, 755 (Tenn. Crim.App.1991). In reviewing post-conviction proceedings, "the factual findings of the trial court are conclusive unless the evidence preponderates against such findings." *Cooper v. State,* 849 S.W.2d 744, 746 (Tenn.1993); *Butler v. State,* 789 S.W.2d 898, 899 (Tenn. 1990).

The "rape" case.

■ The petitioner contends that he continually asked both Mr. Long and Mr. Gwinn for independent serological testing and that they refused to have it done. Mr. Long, however, denied that the request was ever made, and Mr. Gwinn felt that the tests

were not necessary. The petitioner does not indicate how he was prejudiced by such actions if indeed they rose to a level of ineffective assistance of counsel; he only claimed that the failure to perform such a test violated his "constitutional rights."

While it is not clear from the record, it appears that the victim in the rape case, Ms. Bernadine Harvey, was determined to be a group B secretor, and the petitioner was determined to be a group B non-secretor. The state's expert testified at trial that the substance obtained from the victim by vaginal swab contained sperm but no blood group substances and that the result was consistent with the offender being a non-secretor. If the victim was a secretor, there should at least have been group B substances found in the specimen. Petitioner claims this fact makes the results suspect, and thus, Mr. Long should have performed further investigation.

Mr. Long testified that he consulted with a friend of his who was a pathologist and that he and the friend both felt that the report was not suspect and not subject to attack. Therefore, he did not pursue the matter any further. In addition, he denied that the petitioner ever made a specific request for serological testing.

The trial court implicitly found in favor of Mr. Long and Mr. Gwinn's testimony by denying the petitioner's claim. By Mr. Long and Mr. Gwinn's accounts, the failure to pursue testing was a reasonable strategy, even if testing was requested. Therefore, counsel's performance cannot be said to have been deficient. Even if counsel did not act properly in this respect, the petitioner has not established that he was prejudiced by the error in any way. He does not claim the results of any further testing of the victim or himself would exonerate him. In fact, since the petitioner is a non-secretor, it is difficult to believe that any evidence along these lines could factually exonerate him. Such tests would show merely an absence of the secreted chemicals and would not exclude him as the perpetrator. In addition, even if such a test had been done in the light of the otherwise overwhelming proof of guilt as noted by the Court of Criminal Appeals on the direct

appeal of appellant's conviction, including the inadvertent identification of the petitioner by the victim, it would not have affected the jury's verdict.

The "homicide" case.

■■■■■ The petitioner again contends that he was denied effective assistance of counsel because Mr. Chandler did not have independent serological testing performed. Nevertheless, he failed to present evidence demonstrating what inconsistencies or problems were present in the serology report that should have indicated to Mr. Chandler that further testing was necessary. Mr. Chandler testified that the petitioner requested that such testing be done, but he felt it was unnecessary and could have hurt petitioner's defense.

According to testimony at the post-conviction hearing, the victim's body was so decomposed when found that a blood type could not be determined. A vaginal swab was obtained from the victim which contained sperm and a group B substance. In order to explain this, the state introduced a prior medical record of the decedent which indicated that her blood type was B. In view of Mr. Chandler's testimony, which the trial court implicitly accredited in its decision, the decision not to pursue serological testing was a reasonable choice of strategy. Moreover, since the petitioner presented no evidence of what serological testing would have shown and of how it would have benefited him, he failed to demonstrate any prejudice.

■■■ Appellant further contends that he was denied effective assistance of counsel because a search of his truck and the statements he gave the police were not adequately contested by either Mr. Long or Mr. Chandler. We find this claim to be without merit.

The "rape" case.

Mr. Long testified that the petitioner's wife did advise him of the method in which the truck was searched shortly after he was retained. She also told him that she had signed a consent form, and she so testified at the post-conviction hearing. Mr. Long did file a motion to suppress the evidence seized during the search and the oral statements

made by the petitioner, and a suppression hearing was had. At the conclusion of the hearing, the motion regarding the search was denied, but the motion regarding the statements was held in abeyance.

Petitioner states, "it borders on the absurd to present issues in only one of two (2) cases where the facts are substantially the same regarding the searches and statements." Therefore, petitioner contends Mr. Long should have filed a second motion to suppress. However, as the appellant acknowledges, the circumstances were the same in both cases. Obviously, a second motion arguing the same circumstances before the same judge would most probably not have had a different result. We find no error in Mr. Long's failing to file a separate motion in the homicide case, and the petitioner has not shown any prejudice.

Appellant also implies that trial counsel erred by failing to present any witnesses at the suppression hearing. Mr. Long testified that he had no independent recollection of the hearing so he could not explain why he chose to proceed in that manner. He did testify that he interviewed Mrs. Long and that she told him she had consented to the search and provided him with such information that it was reasonable to decide not to present her testimony at the suppression hearing.

The record does not show that the petitioner made oral statements to the police pertinent to the rape case.

The "homicide" case.

■ Appellant contends that Mr. Chandler's performance was ineffective because he did not file a motion to waive the local rules with respect to the timely filing of pre-trial motions. It should be noted that Mr. Chandler was appointed to represent appellant only after the time for filing pre-trial motions in the homicide trial had passed. Mr. Chandler testified that he did make an oral motion to waive the local rules, but the trial court denied his motion. In addition, the reading of the transcript of the homicide trial at the post-conviction hearing indicates that he was aware that a suppression motion had been filed and apparently denied because

the state was attempting to introduce evidence obtained as a result of a search of the truck. However, he made an oral motion in court to suppress the evidence, particularly the belt. Mr. Chandler explained that he was hesitant about making such a motion because:

> [the trial judge] is a stickler for the time requirements that are imposed on us by local rules, and [he] had to deal with his personality and the local rules, and [he] was not able to go back into those matters ... [He] did not want the judge to get so angry [at him] trying to go back and do things that he didn't think I ought to do, that he would hold this against [him] during the course of the trial.

The decision not to file a written motion to waive the rules was a strategic one, based upon counsel's knowledge and experience of working with the trial judge and was appropriate under the circumstances. In addition to the oral motion, he made an objection to the admission of the evidence even though the pre-trial motion to suppress filed by Mr. Long had been denied. He raised it as an issue in the Court of Criminal Appeals. Mr. Chandler did the best he could under the circumstances. Also, even if he had been allowed to file a motion to suppress, the evidence had already been determined to be admissible at the previous suppression hearing and a different result would have been unlikely. Petitioner has failed to establish deficient performance of counsel or prejudice to the appellant.

■ The record shows the only "statement" made by the appellant consisted of a denial that he had known and worked for the victim and a failure to mention Homecrafters until the police mentioned it when asked where he had worked. Mr. Long filed a motion to suppress the statements, and at the suppression hearing, the trial court reserved a ruling on the matter until trial. The record does not indicate how the matter was dealt with by Mr. Chandler at trial, but apparently the trial court allowed the statements to be admitted. Appellant failed to question Mr. Chandler with regard to this issue nor has he indicated what would support suppression of the statements. He did

state that he would get back to the issue at a later time in the cross-examination, but he never did. Appellant has failed to meet his burden of proving that Mr. Chandler's performance was ineffective. Additionally, he has failed to establish that the suppression would have affected the verdict, especially in light of the strong evidence against him. He has failed to establish a claim of ineffective assistance of counsel regarding this issue.

The "rape" case.

■ Appellant's complaint of failure to perform adequate pre-trial investigation both on the part of Mr. Long and Mr. Gwinn involves the failure to interview potential witnesses. The appellant contends that Mr. Long failed to interview Theresa Gholston, a co-worker of the rape victim, who testified that no one from the defense contacted her. Nyanza Bonner, one of three men who discovered the rape victim, was not asked if defense counsel had contacted him. The appellant also contends that counsel failed to interview the following people: Michael Harris, one of the three men who discovered the rape victim; Jesse Mitchell, who lived across the street from the 7–11 store; Ms. Bobbie Stacks, a serologist; Ms. Jo Jones, a rape crisis nurse who examined the victim; Bernadine Harvey, the rape victim; James Burk, a friend of the victim; the DeBerrys, a couple for whom the appellant did some plumbing work; the police detectives; 7–11 employees; Walter Kimbrough, a witness who saw a man pretend to use the phone while watching the victim in the 7–11 store; the fingerprint technician (however, no fingerprint evidence was introduced at trial); and Arthur Scruggs, a witness who lived across the street from the murder victim.

At the post-conviction hearing, Mr. Long testified that he interviewed Ms. Gholston; at least two of the men who discovered the rape victim at the side of the road; Detectives LeBare, Hodges, and Bolden; and two employees of the 7–11. He also attempted to interview the victim, but she did not wish to speak with him. Mr. Long testified that he did not interview Ms. Jones, Ms. Stacks, Mr. Kimbrough, nor Arthur Scruggs. In addition to interviewing the witnesses mentioned, Mr. Long testified he interviewed Ms. Sarah

Coleman, a next door neighbor and her daughter; Barbara Welch, the paper girl; Robert Bendereck, for whom the defendant had done some work; Ms. Martha Briggs and Ernest Johnson, Sr., both of whom testified at trial; Marvin Williams, Ms. Davis's son; and a daughter of Ms. Harvey. He also attempted to contact the boyfriend of the victim but could not locate him. Additionally, Mr. Long testified that he went to the crime scene and photographed everything. He spoke with the Jamisons because the defendant did plumbing work for them and two other women whose names he received from Homecrafters. He also consulted with a pathologist who was a friend of his about the serology results on several occasions. He reviewed physical evidence with the prosecutor and took photos of all the physical evidence he was shown. Further, he met with the appellant many times pre-trial and discussed whether he should testify at trial. Mr. Long also testified that he presented a total of five defense witnesses at trial.

The record shows that Mr. Long thoroughly investigated the case prior to trial. Although his investigation techniques may not have been perfect or to the petitioner's specification, they do not constitute ineffective assistance of counsel. Additionally, the evidence the petitioner alleges these witnesses could have provided most likely would not have affected the verdict. The trial court properly denied the petitioner's Petition for Post–Conviction Relief.

The "homicide" case.

■ The only potential witnesses the petitioner alleges Mr. Chandler failed to interview are Arthur Scruggs, a neighbor of the victim; Ms. Sutton, the serologist; Mr. Kimbrough, a witness in the rape case; the fingerprint technician, even though the record does not indicate that fingerprint evidence was introduced at trial; and any 7–11 employees (the victim was last seen in a 7–11).

Mr. Chandler testified that he did not remember interviewing the fingerprint technician, Ms. Savannah Cooley, Mr. Scruggs, or going to the 7–11 to speak with employees. However, he testified that he has cross-ex-

amined Ms. Sutton, a serologist, in the past and felt she was a competent witness.

Mr. Chandler testified that he interviewed many alibi witnesses and that they testified at trial. He also met with the petitioner on "more than one occasion" prior to trial. He testified that he interviewed many witnesses personally, including Moes Pleasure, the victim's ex-husband, and had a law clerk assisting him on the case. He testified that he never felt unprepared for trial.

It is clear from the record that Mr. Chandler adequately investigated the case and therefore provided the petitioner with effective assistance of counsel, which the trial court properly held.

■■■■ The appellant also alleges "numerous errors" on the part of trial counsel. Specifically, he complains of trial counsel's actions of revealing the criminal record of the appellant and failure to object on the proper grounds. He does not explicitly say which errors he is referring to; however, we assume he is alleging that Mr. Long erred by telling the jury during voir dire about a prior conviction of the petitioner and Mr. Chandler's failure to object on a specific ground to the admission of past medical records of the decedent in the homicide case.

With regard to Mr. Long's mention of the petitioner's record during voir dire, it is clear when read in context that it was a strategic move on Mr. Long's part. He was aware of the petitioner's prior criminal history and believed that three of the four prior convictions would be properly admitted at trial. He was asking the jurors, knowing that the evidence was likely to be admitted, whether they could put that information aside and reach a fair verdict based upon the evidence presented at trial. While it may not have been a perfect strategical move, it is understandable under the circumstances, and even if error, it cannot be considered to rise to the level of ineffective assistance of counsel. In any event, the appellant was not prejudiced because the evidence of the prior record was introduced at trial. This court found that although a "Morgan" hearing should have been held to determine the admissibility of the prior convictions, the evidence of the prior convictions did not affect the verdict.

■■■ With regard to the objection issue, Mr. Chandler did object to the prior medical records of the victim being admitted into evidence at trial on the grounds of relevancy and "Rule 16 of discovery" but not on the basis of hearsay. He testified at the post-conviction hearing that he erred by presenting this basis for objection to the trial court. We are of the opinion that the failure to object on hearsay grounds, even if error, did not rise to the level of ineffective assistance of counsel. Even if it can be so construed, it is clear that the appellant was not prejudiced by this error because the evidence of the appellant's guilt was strong and this one piece of evidence did not likely affect the result.

Following our review of this record and each of the issues raised by the appellant, we are of the opinion that the judgment of the Court of Criminal Appeals should be affirmed.

Costs on appeal are taxed to the petitioner/appellant and the case is remanded to the trial court for the implementation of its judgment and any further necessary proceedings.

ANDERSON, C.J., and DROWOTA, REID and BIRCH, JJ., concur.