IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 8, 2002

## FREDERICK BEAUREGARD v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 5990    Jon Kerry Blackwood, Judge**

---

**No. W2001-02546-CCA-R3-PC  - Filed June 5, 2002**

---

The Appellant, Frederick Beauregard, appeals from the Hardeman County Circuit Court's denial of his petition for post-conviction relief.  In May of 1997, Beauregard was convicted of the rape and incest of his thirteen-year-old daughter.  He received an effective sentence of nine years for the convictions.  Beauregard's convictions and sentences were later affirmed on direct appeal. *See State v. Beauregard*, 32 S.W.3d 681 (Tenn. 2000).  On February 13, 2001, Beauregard timely filed his *pro se* petition for post-conviction relief which was amended following appointment of counsel. Following a hearing on the merits, the trial court denied Beauregard's petition.

From this denial, Beauregard now appeals asserting that he received ineffective assistance of trial counsel in the following respects: (1) trial counsel was inadequately prepared for trial; (2) trial counsel failed to properly investigate, interview or call material witnesses at trial; (3) trial counsel failed to discuss trial strategy or the theory of the case with Beauregard; (4) trial counsel failed to review the jury list with Beauregard; (5) trial counsel failed to develop testimony with regard to the chain of custody of the rape kit and its reliability; and (6) trial counsel failed to provide expert proof to rebut the State's DNA expert.  After review, we find no error and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Harriet S. Thompson, Bolivar, Tennessee, for the Appellant, Frederick Beauregard.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; J. Ross Dyer, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and James Walter Freeland, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## Factual Background

The underlying facts relative to this post-conviction petition were summarized by the supreme court on direct appeal as follows:

[The Appellant] was charged in a two-count indictment with rape and incest of his thirteen-year-old daughter, S.J. On the day in question, S.J. was visiting her grandmother's home, where her father, [the Appellant], resided. S.J. was lying down in a bedroom when [the Appellant] entered the room and sat down on the bed next to her.

[The Appellant] asked S.J. if she knew how to "nut" and whether S.J. had ever had sex. When [the Appellant] then began feeling her breasts, S.J. unsuccessfully tried to push [the Appellant] away. [The Appellant] pulled S.J.'s jeans and panties down to her knees and "stuck his penis" in her genital area. [The Appellant] stopped when the telephone in the living room rang and he went to answer it. When [the Appellant] left the room, S.J. put her clothes back on and used the bedroom telephone to call a friend of her mother's and ask the friend to pick her up. S.J. then locked herself in the bathroom and remained there until she heard a car pull up to the house and the horn blow.

S.J. was later examined at a hospital [where doctors] found seminal fluid at the entrance to S.J.'s vagina and completed a sexual assault kit. Sherri Harrell, a forensic serologist, tested the items from S.J.'s assault kit and found semen and spermatozoa on the slides. Joe Minor, a forensic scientist, conducted further tests and testified that [the Appellant] could not be excluded as the source of the semen. Minor opined that the semen was from [the Appellant] or a close relative.

*State v. Beauregard*, 32 S.W.3d at 682.

## ANALYSIS

## Ineffective Assistance of Trial Counsel

The Appellant bears the burden of establishing his allegations contained in the petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). Findings of fact and conclusions of law made by a post-conviction court are given the weight of a jury verdict. *Davis v. State*, 912 S.W.2d 689, 697 (Tenn. 1995). Unless evidence contained in the record preponderates against the judgment, this court is bound by those findings on appeal. *Id.* This court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the trial court. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The issues of deficient performance by counsel and

possible prejudice to the defense are mixed questions of law and fact; thus, our review of this case is *de novo*. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Furthermore, to succeed in a challenge for ineffective assistance of counsel, the Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984), the Appellant must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency.

## A. Pre-Trial Preparation

First, the Appellant argues that trial counsel's "few visits" with the Appellant prior to trial resulted in inadequate representation. The Appellant was released on bond several months prior to the trial. Although trial counsel testified at the post-conviction hearing that he felt adequately prepared for trial, nonetheless, he discussed his frustrations in maintaining contact with the Appellant prior to trial:

> One of the problems I had with [the Appellant] is, he didn't make an effort to stay in touch with me. I think we made several telephone calls trying to get [the Appellant] to come to the office, and I ended up having to go to his house. And whatever interviews we did were at his house. I don't recall him coming to my office any . . . . I went to . . . his house three, four, maybe five occasions.

Trial counsel further testified that the Appellant would not answer his phone and that he had visited the Appellant's home on other occasions to prepare for trial, only to find that the Appellant was away. As explained by trial counsel at the post-conviction hearing, "If I hadn't gone to see him, we would have shown up in court and not been ready to do anything. So, if I didn't make house calls, we wouldn't have known anything." The Appellant admits that trial counsel did, in fact, visit him at his residence once or twice and that he made no effort to contact trial counsel himself prior to trial.

With respect to this issue, the trial court concluded that trial counsel "met with [the Appellant] on sufficient occasions to present an adequate defense." We agree. We find nothing in the record to support the assertion that trial counsel was inadequately prepared for trial notwithstanding the Appellant's lack of cooperation in assisting in his own defense. It cannot be said that counsel's performance in this respect was deficient. Because we find no such deficiency, we need not address the prejudice prong of *Strickland*.

## B. Additional Witnesses

The Appellant next contends that trial counsel was ineffective for failing to investigate, interview or call certain witnesses at trial. He asserts that this alleged error was highly prejudicial and effected the outcome of his trial.

First, he argues that trial counsel erred by failing to interview and call witnesses Elton Morrow and Jerry Jones to testify at trial. The Appellant maintains that his daughter had given both Morrow and Jones pictures to pass along to the Appellant after the date of the rape. According to the Appellant, this testimony would have helped the jury realize that his daughter still wanted to have contact with him. Trial counsel testified that he did interview both Morrow and Jones but determined that "they didn't have anything to say that would help [the Appellant]."

Second, the Appellant asserts that trial counsel was ineffective for failing to call as a witness the nurse who assisted in examining the victim at the hospital on the night of the rape. The Appellant explained that he wanted the nurse to testify in the event she could rebut the testimony of the examining doctor who testified that the victim stated her father raped her. The Appellant admits that he does not know what the nurse's testimony would have been but maintains that she should have been called to testify in the event "the victim made statements exonerating" him at the hospital that night. The Appellant acknowledged that he never discussed the possibility of the nurse testifying with trial counsel.

Third, the Appellant argues that trial counsel was ineffective for failing to call Lisa Nunn, who is employed with the Department of Children's Services, to testify on his behalf at trial. Nunn interviewed the victim after the rape and tape-recorded the conversation. At the post-conviction hearing, Nunn testified that she no longer had the tape or her case notes and did not recall the particular facts of the case since it had been some time since the incident occurred. The Appellant argues that a "lack of investigation" on the part of trial counsel can be inferred from her testimony since the case file and her notes were not subpoenaed until the post-conviction hearing. Trial counsel, however, testified that he still possessed a copy of the tape-recorded interview. In the interview, the victim clearly stated that her father raped her. Trial counsel felt there was no need to have Nunn testify about the contents of the tape when there were no conflicting statements made by the victim.

We note that the Appellant failed to call Jones, Morrow, or the nurse to testify at the post-conviction hearing. This court refuses to speculate on the question of whether further investigation of a witness or failure to call a witness would have produced evidence favorable to the Appellant's case. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The Appellant has simply failed to meet his burden of proof with respect to these potential witnesses. With respect to Nunn, who did testify at the post-conviction hearing, we conclude that her testimony in no way supports the Appellant's argument, as she simply testified that she was unable to recall the particular facts of the case and no longer had access to information about that case. Because the Appellant has failed to show how the absence of these witnesses was prejudicial, these issues are without merit.

### C. Trial Strategy

The Appellant also argues that trial counsel failed to discuss trial strategy or a theory of the case with him. He makes no further argument in this regard. Trial counsel testified that he did discuss the theory of the case with the Appellant. Because the Appellant makes no mention of how

this alleged failure prejudiced the case, we accredit trial counsel's testimony and find this issue to be without merit.

### D. Jury List

The Appellant argues that trial counsel "did not provide a list for the appellant to review for jury selection." At the post-conviction hearing, trial counsel testified that he did not recall if they reviewed the names of prospective jurors prior to trial. Again, because the Appellant has failed to show how such alleged error affected the outcome of this case, we find no merit in this issue.

### E. Chain of Custody

The Appellant next maintains that trial counsel was ineffective because he "failed to exert every reasonable effort on behalf of the appellant in the trial on the issue of chain of custody" regarding evidence which was developed from the rape kit. More specifically, the Appellant contends that trial counsel "was remiss in not developing and vigorously challenging the chain of custody issue which would have been highly beneficial to the defense."

At the post-conviction hearing, trial counsel testified that he did feel there was a problem with the chain of custody of various items of evidence introduced from the rape kit and objected to their admission at trial. After his objection was overruled, he decided not to further pursue the issue because he felt calling additional witnesses would "firm the chain of custody up." Trial counsel's decision was a tactical one. Assuming adequate investigation, the fact that a strategy or tactic failed or hurt the defense does not alone support an ineffective assistance of counsel claim. *Thompson v. State*, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). After reviewing the record, we cannot conclude that trial counsel's decision was ineffective. He objected to the chain of custody. Once overruled, he made a tactical decision to leave the issue alone. This court does not sit to second-guess strategic and tactical choices made by trial counsel. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). Such performance on the part of trial counsel was not deficient. This issue is also without merit.

### F. Expert DNA Proof

Lastly, the Appellant contends that trial counsel was ineffective for failing to obtain and provide expert testimony concerning the similarity of DNA between relatives. Specifically, the Appellant argues that trial counsel should have defended under the theory that Appellant's brother actually committed the rape.

At trial, Joe Minor, a forensic scientist, testified that he had examined the DNA from semen taken from the victim's vagina after the rape. Minor concluded that the Appellant could not be excluded as being the source of the semen. However, Minor also testified that the semen was either from the Appellant or a close relative. At the post-conviction hearing, trial counsel testified that there were no funds available to hire an expert and that the court would not have allocated the money anyway. Moreover, trial counsel testified that a theory that the Appellant's brother committed the

rape was contradictory to the other evidence presented at trial. Trial counsel explained the defense pursued at trial:

> Basically, the theory would be that [the victim] came out to [the Appellant's] house, visited there, left. She came back, basically called someone and said she was raped . . . there was a DNA test taken. Our theory included the fact that the DNA analysis, the serial was tampered. It was flawed.

The theory developed at trial did not include the implication of relatives with similar DNA having sexual contact with the victim at the home. Rather, the theory was that the Appellant's daughter left the home, came back, and said she had been raped. We fail to see how trial counsel's failure to introduce expert rebuttal testimony concerning the DNA test results was deficient, as such testimony would have completely contradicted the Appellant's theory of the case at trial. This issue is without merit.

## CONCLUSION

After review, we find that the Appellant has failed to meet his burden of proving, through clear and convincing evidence, that trial counsel's performance was ineffective. Therefore, we affirm the Hardeman County Circuit Court's denial of the Appellant's petition for post-conviction relief.

_____
DAVID G. HAYES, JUDGE