IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 24, 2002 Session

## CLAYTON EUGENE TURNER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sullivan County**
**No. C44, 490      Phyllis H. Miller, Judge**

---

**No. E2001-02476-CCA-R3-PC**
**October 1, 2002**

---

The Defendant, Clayton Eugene Turner, brings this appeal from the trial court's denial of post-conviction relief. The Defendant was convicted by a jury of rape of a child, incest, and assault. He argues two issues in this appeal: (1) that he was denied the effective assistance of counsel at trial, and (2) that the trial court erred by denying the Defendant's post-conviction request for the appointment of experts in the fields of DNA analysis and the transmission of infectious diseases. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and JOE G. RILEY, JJ., joined.

Mark Harris, Kingsport, Tennessee, for the appellant, Clayton Eugene Turner.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Greeley Wells, District Attorney General; and Barry Staubus, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On July 30, 1997, the Defendant, Clayton Eugene Turner, was found guilty by a jury of rape of a child, a class A felony, incest, a class C felony, and assault by offensive touching, a class B misdemeanor. He was sentenced to 25 years in confinement for the rape of a child, 6 years in confinement for incest to run consecutively to the 25 year sentence, and 6 months for assault to run concurrently for the 25 year sentence, for an effective sentence of 31 years. This Court affirmed the Defendant's convictions and sentences on direct appeal. The Defendant subsequently filed a petition for post-conviction relief. The trial court, after conducting an evidentiary hearing, denied relief. It is from the order of the trial court denying the Defendant post-conviction relief that he appeals.

A review of the facts established at trial will be helpful to understanding our analysis of the issues raised by the Defendant. The State's proof at trial established that on July 30, 1996, M.K. and R.K., the victims in this case, were visiting the home of their mother.[1] Also living in that home was the Defendant, the step-father of the two minor girls. While the girls were visiting their mother and the Defendant, M.K., who was 12 years old at the time of the offense, slept on the couch in the living room, while R.K., who was ten years old, slept with her mother and the Defendant in one of the bedrooms. Early on the morning of July 30, 1996, R.K. awoke to find that she had been moved from her mother's side of the bed to the Defendant's side and her underwear had been pulled down to her knees. The Defendant's hand was on her navel. R.K. immediately left the bed, pulled her underwear up, and went to the couch where M.K. was sleeping. Shortly thereafter the Defendant came into the living room and told R.K to return to the bedroom, which R.K. did. Some time later, M.K. awoke on the couch to find the Defendant lying beside her. The Defendant allowed M.K. to go to the bathroom, but he soon went into the bathroom with her. He remarked that she was "pretty" and said "a bunch of other stuff." Finally the Defendant left the bathroom, and M.K. returned to the couch in the living room. While she was attempting to go back to sleep, the Defendant approached the couch. This time, the Defendant tried to gag M.K. with a bandana. She struggled, and the Defendant offered her twenty-five dollars for her cooperation. When M.K. refused, the Defendant placed a towel over her mouth, ripped off her underwear, and forcibly engaged in sexual intercourse with her. As M.K. continued to struggle, the Defendant threatened to kill everyone in the trailer. M.K. told her mother about the rape as soon as her mother woke up. Her mother called the police, and M.K. and R.K. were taken to the hospital.

The attending emergency room physician examined both victims. He discovered no signs that R.K. had been sexually assaulted. However, after performing a pelvic examination of M.K., he found that the entrance to her vagina was bruised, her vagina was reddened, and there appeared to be semen in the vaginal area. He concluded that these findings were consistent with recent sexual intercourse. Subsequent DNA testing established that the DNA extracted from the semen matched the DNA sample obtained from the Defendant. On the day after the offenses occurred, the police located the Defendant at Woodridge Hospital, a mental health treatment facility. The Defendant was taken to the police station where he admitted to engaging in sexual intercourse with M.K. but denied having sexual contact with R.K. During his confession, the Defendant stated that he had been suffering from blackouts prior to entering Woodridge, and had been possessed by a person named Jack who had directed his actions and forced him to watch pornographic movies. Based upon the proof presented at trial, including the identification testimony of each of the victims, DNA evidence, and the Defendant's confession, the Defendant was convicted of rape and incest with respect to M.K. and assault with respect to R.K.

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-210(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or reevaluate the evidence below; all questions concerning the credibility of witnesses, the

---

[1] We will identify the minor victims in this case by their initials.

weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79.

The Defendant first argues that he received ineffective assistance of counsel during the time leading up to trial, at the suppression hearing, and at trial. He contends that his counsel was ineffective because: (1) counsel failed to explore possible mental or medical defenses in preparation for trial, (2) counsel failed to explore the victim's prior sexual history in preparation for trial, (3) counsel failed to present evidence at the suppression hearing of the Defendant's lack of the mental capacity to waive his constitutional right to remain silent and voluntarily and knowingly give the police a statement, and (4) counsel denied the Defendant the right to testify on his own behalf at his trial.

Both the Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution guarantee a defendant the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to counsel includes the right to effective counsel. See Strickland v. Washington, 466 U.S. 668, 686 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

To determine whether counsel provided effective assistance at trial, the court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. See Baxter, 523 S.W.2d at 936; Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). To succeed on a claim that his or her counsel was ineffective at trial, a defendant bears the burden of showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the defendant resulting in a failure to produce a reliable result. See Strickland, 466 U.S. at 687; Burns, 6 S.W.3d at 461; Hicks, 983 S.W.2d at 245. To satisfy the second prong, the defendant must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the defendant's guilt. See Strickland, 466 U.S. at 694-95. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994); Owens v. State, 13 S.W.3d 742, 750 (Tenn. Crim. App. 1999).

When reviewing trial counsel's actions, this Court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); Owens, 13 S.W.3d at 749. Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances. See Strickland, 466 U.S. at 690; Hicks, 983 S.W.2d at 246.

The Defendant argues that his attorney was ineffective by failing to explore possible mental or medical defenses in preparation for trial. More specifically, the Defendant asserts that counsel should have explored the defense of insanity as well as the Defendant's claim that he was suffering from herpes at the time of the rape. With respect to the failure to explore an insanity defense, the record reflects that the Defendant's attorney requested and was granted a court-ordered mental evaluation of the Defendant for the purpose of determining his mental condition at the time of the rape and whether the Defendant was competent to stand trial. The examination of the Defendant was performed by Central Appalachia Services, which concluded that

> the defendant's condition is such that he is capable of defending himself in a court of law. In making this determination, we found that the defendant understands the nature of the legal process, that he understands the charge pending against him and the consequences that can follow, and that he can advise counsel and participate in his own defense.
>
> After completion of the evaluation . . . , it is our opinion that a defense of insanity cannot be supported. This opinion is based on the determination that at the time of the commission of the act constituting the offense, the defendant was able to appreciate the nature or wrongfulness of such act.

Furthermore, Steve Wallace, the Public Defender for Sullivan County who worked closely with the Assistant Public Defender assigned to the Defendant's case, testified that the Defendant had no prior history of mental illness that would alert them to a need for a second evaluation.[2] "When counsel has no reason to know of a client's mental problems, the Sixth Amendment does not impose a general duty to explore the defendant's mental capacity." Edward Leroy Harris v. State, No. 03C01-9311-CR-00381, 1996 Tenn. Crim. App. LEXIS 256, at *10 n.1 (Knoxville, April 26, 1996) (citing Riley v. Snyder, 840 F.Supp. 1012, 1027 (D. Del. 1993)). See, e.g., United States ex rel. Rivera v. Franzen, 794 F.2d 314, 317 (7th Cir. 1986); Clanton v. Blair, 826 F.2d 1354, 1358 (4th Cir. 1987). However, even if counsel was deficient in not requesting a second mental evaluation, the Defendant has presented no proof that a second mental evaluation would have produced any different opinion than the first evaluation. Clearly, there has been no showing of prejudice. Accordingly, this issue is without merit.

With respect to counsel's failure to investigate the Defendant's claim that he was suffering from herpes at the time of the rape and therefore that his victim would have contracted the disease, Public Defender Steve Wallace testified at the post-conviction hearing that he had no recollection of the Defendant ever alerting him or attorney Chad Newton to his herpes condition and there was nothing in the Public Defender's file indicating that the Defendant ever had herpes or had been treated for herpes. As counsel has no duty to investigate a defendant's mental capacity where he has

---

[2]The Defendant's attorney, Chad Newton, died prior to the post-conviction hearing. Therefore, Public Defender Steve Wallace testified at the post-conviction hearing regarding Mr. Newton's representation of the Defendant.

no knowledge of the defendant's mental problems, neither does counsel have a duty to investigate the possible transmission of a sexually transmitted disease where he has no knowledge that the defendant is suffering from such a disease. The trial court also noted that the medical records from Woodridge Hospital, where the Defendant was given a physical examination on the morning of the offenses, reflect that the Defendant denied itching, dryness, rashness, lesions, discoloration, or other skin changes that might indicate the presence of genital herpes. Furthermore, the trial court found that the Defendant presented no other proof, such as medical records or testimony, which would corroborate his assertion that he was suffering from genital herpes. Neither has he shown that if he had been suffering from herpes at the time of the rape that his victim necessarily would have contracted the disease. Therefore, the Defendant has failed to prove either deficient performance of counsel or prejudice, and this issue is without merit.

Next, the Defendant asserts that his counsel was ineffective by failing to explore the victim's prior sexual conduct in preparation for trial. We note at the outset that Tennessee Rule of Evidence 412(c), with a few exceptions, forbids the introduction of evidence of specific instances of a victim's sexual behavior in sex offense cases. In his brief, the Defendant asserts that the victim's prior sexual behavior was relevant pursuant to Rule 412(c)(4)(i) to rebut or explain scientific or medical evidence and Rule 412(c)(4)(ii) to prove or explain the source of semen, injury, disease, or knowledge of sexual matters. At the post-conviction hearing, the Defendant testified that M.K. had "messed with her cousin" a few days before the instant offense. The conduct to which the Defendant refers resulted in a conviction of M.K.'s cousin for sexual battery based on the cousin's conduct in touching M.K. The Defendant maintains that evidence of this conduct is relevant to explain the source of semen, but he has presented no proof that the sexual battery by touching of M.K. by her cousin included ejaculation that would explain the alternate source of semen. In fact, the Defendant admitted at the post-conviction hearing that the juvenile court found the incident to be a sexual battery by the cousin against M.K. Absent proof that M.K. had engaged in sexual intercourse, the sexual battery of M.K. by her cousin is irrelevant and inadmissible under Tennessee Rule of Evidence 412. Therefore the Defendant has demonstrated no prejudice by his attorney not exploring the victim's prior sexual history, and this issue is without merit.

The Defendant further argues that his counsel was ineffective by failing to raise evidence at the suppression hearing of the Defendant's lack of the mental capacity to waive his constitutional right to remain silent and voluntarily and knowingly give the police a statement. The Defendant maintains that evidence of his diagnosis and treatment and the medications he was prescribed during his stay at Woodridge Hospital immediately after the offenses was relevant to demonstrate that he lacked the mental capacity to voluntarily waive his right against self-incrimination at the time of his confession. However, the discharge summary from Woodridge Hospital describes the Defendant's mental status at the time of the discharge as follows: "The patient is alert, fully oriented. Mood and affect mildly depressed with some preoccupation and concern with personal fate. Speech coherent and goal directed. Thought process appears logical with good associations. Content without any obvious psychotic elements objectively seen. Cognitive function at a baseline." The summary does not indicate that the Defendant was either given any medications at the time of his discharge or prescribed any medications. Eddie Sims, an investigator for the Public Defender's office, testified

at the post-conviction hearing that Mr. Newton sent for and reviewed the Defendant's records from Woodridge as well as his medical records. Clearly it was not error for counsel to not introduce the records from Woodridge Hospital at the suppression hearing. The trial court found that the Woodridge records only reinforced the conclusion that the Defendant was fully capable of knowingly, intelligently, and voluntarily waiving his constitutional right against self-incrimination and giving a statement to the police. And as we have already noted, Mr. Wallace testified that there was nothing else to indicate that the Defendant had any prior history of mental illness. Moreover, the Defendant has failed to show that there was anything in the records that could have possibly benefitted his defense. This issue is without merit.

The Defendant also argues that his counsel was ineffective by denying him the right to testify on his on behalf. He states that he expressed a desire to testify on numerous occasions, but that his attorney, Mr. Chad Newton, would not allow him to testify. The Defendant testified at the post-conviction hearing that although he told Mr. Newton that he wanted to testify, Mr. Newton would not discuss the issue with him. Instead, Mr. Newton simply told him what they were going to do. However, the Defendant admitted at the post-conviction hearing that at the end of the first day of trial, Mr. Newton told the court, "I anticipate calling perhaps the defendant. That's his option. I don't know if I would tell him to testify, but he's got a right to, and he may want to . . . ."

In his brief, the Defendant cites Momon v. State, 18 S.W.3d 152 (Tenn. 1999), to support his argument that he was denied the right to testify. In Momon, our supreme court stated that a defendant's right to testify on his or her own behalf is fundamental, and as a fundamental right, it must be waived personally by the defendant. Id. at 161. "To ensure that defense attorneys in future criminal cases do not unilaterally deprive criminal defendants of the fundamental right to testify, in every trial where the defendant does not testify, the trial court should . . . require[ ] defense counsel" to conduct a hearing on the record to ensure that the defendant has made a knowing, intelligent, and voluntary waiver of the right to testify. Id. at 162. The Defendant concedes in his brief that the procedural requirements of Momon were not yet in place at the time of his trial, and indeed, are expressly not retroactive. See id. at 162-63. However, the Defendant relies on Momon, stating that the absence of a waiver on the record serves to corroborate his assertions that he wanted to testify and was denied that right by his attorney. We disagree. The fact that no waiver of the Defendant's right to testify appears on the record cannot be used to support any argument regarding the Defendant's right to testify because the waiver was not required to be on the record, as Momon had not yet been decided. However, we acknowledge that if the Defendant were actually denied the right to testify by his attorney, that would establish a constitutional error regardless of the fact that Momon was yet to be decided, as Momon did not create new rights, but only provided additional safeguards to protect a right long recognized. See id. at 163.

Public Defender Wallace testified at the post-conviction hearing that he met with Mr. Newton and the Defendant for the express purpose of deciding whether the Defendant should testify. The two attorneys advised the Defendant that in light of the evidence put forth by the State, the DNA evidence, the confession by the Defendant to the rape of M.K., and the testimony of the victims, which identified the Defendant and corroborated his confession, it would not be helpful for the

Defendant to testify. Mr. Wallace said that the Defendant agreed at that meeting that it was in his best interest not to testify. Wallace testified that the Defendant never expressed a desire to testify, and if he had done so, he and Mr. Newton would have called him as a witness. The trial court at the post-conviction hearing credited the testimony of Mr. Wallace over that of the Defendant. The court found that the Defendant did voluntarily, intelligently, and knowingly waive his right to testify as Mr. Wallace said and that he never expressed a desire to testify to either Mr. Wallace or Mr. Newton. The evidence does not preponderate against the trial court's finding that Mr. Newton did not deny the Defendant the right to testify. The trial court found that Mr. Newton and Mr. Wallace held a meeting to discuss the option of having the Defendant testify, and they all agreed that he would not. This issue is without merit.

Finally, the Defendant argues that the trial court erred by denying the Defendant's post-conviction request for the appointment of experts in the fields of DNA analysis and the transmission of infectious diseases. He asserts that the experts could have "resolved the question of whose semen was recovered from the victim" and "whether the herpes carried by [the Defendant] had to have been transmitted to the alleged victim if he had committed the offense he was convicted of committing." Our supreme court has previously addressed the Defendant's claim in Davis v. State, 912 S.W.2d 689 (Tenn. 1995). "[T]he state is not required to provide expert assistance to indigent non-capital post-conviction petitioners." Id. at 696-97. "In Tennessee there is no rule or statute that entitles a non-capital post-conviction petitioner to state funded expert assistance." Id. at 695. Furthermore, "[i]n the absence of a Constitutional right to counsel, there can be no Constitutional right to support services at state expense." Id. at 696. In accordance with our supreme court's decision in Davis, this issue is without merit.

For the foregoing reasons, we affirm the trial court's denial of the Defendant's petition for post-conviction relief.

DAVID H. WELLES, JUDGE