# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 2, 2010

## TREVOR FORD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 03-02258     John P. Colton, Jr., Judge**

---

**No. W2009-02434-CCA-R3-PC  - Filed October 8, 2010**

---

The Petitioner, Trevor Ford, appeals as of right from the Shelby County Criminal Court's denial of his petition for post-conviction relief.  In 2007, the Petitioner was convicted by a jury of second degree murder and sentenced to twenty-two years.  On appeal, he argues that the denial of his petition was error because he did not receive the effective assistance of counsel at trial.  Specifically, he contends that counsel failed to introduce evidence of specific violent acts by the victim, failed to secure testimony establishing the victim's reputation for violence, and failed to pursue funding for a forensic pathologist.  Additionally, he argues that the refusal to grant funds for an expert at the post-conviction level denies him fundamental due process and amounts to cruel and unusual punishment.  Following our review of the record and the parties' briefs, we conclude that the Petitioner has not shown that he is entitled to relief.  The judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Lance Chism, Memphis, Tennessee, for the appellant, Trevor Ford.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William L. Gibbons, District Attorney General; and David Zak, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### Factual Background

The Petitioner was convicted by a jury of second degree murder, and he was subsequently sentenced to twenty-two years at 100% as a violent offender. On direct appeal, this Court affirmed the sufficiency of the convicting evidence supporting the Petitioner's conviction. State v. Trevor Ford, No. W2007-00291-CCA-R3-CD, 2008 WL 2219395, at *2-3 (Tenn. Crim. App., Jackson, May 28, 2008).

The underlying facts, as established by the evidence presented at the Petitioner's trial, were set forth in this Court's opinion adjudicating the Petitioner's direct appeal:

On January 10, 2003, Defendant and a group of friends, including the victim, met at a bar in Memphis called Rally Point. The group played pool and drank beer. During the evening, the victim and Defendant got into a "tussle" and punches were thrown. The management asked them to leave the bar. While in the parking lot, the victim and Defendant continued to "have words" with each other but were not physically assaulting each other.

Lisa Cash testified that she saw the altercation inside the bar and what happened in the parking lot. Also, in the parking lot, Ms. Cash heard the victim threaten to kill Defendant. After the victim and Defendant stopped yelling at each other, Defendant got into an SUV with Ms. Cash, her boyfriend, Harry Jarrett, and another woman. After a few moments, Defendant jumped out of the SUV and got into the car with the victim. Ms. Cash testified that about thirty to forty minutes after the victim and Defendant sped off, she received a phone call from Defendant. Defendant asked her to come and pick him up. She complied and picked him up where Defendant said the victim had dropped him off. Defendant apologized to Ms. Cash for his behavior and "teared up."

Mr. Jarrett testified that he tried to follow the victim and Defendant because he was afraid of what the victim might do. However, because the victim was driving at a high rate of speed, Mr. Jarrett was unable to keep up and lost the car. Mr. Jarrett testified that Defendant called later and that his girlfriend went to pick him up and brought him back to Mr. Jarrett's mother's home. Defendant apologized for almost hitting Mr. Jarrett when he tried to break up the fight at the bar and then Defendant started crying.

Tammie Howard testified that she was in her apartment on University Street when she noticed a car pull into the parking lot around two o'clock on the morning of January 11, 2003. Ms. Howard testified that she noticed the car because she thought it was her aunt and expected her to knock on the door.

When no one knocked on the door and she heard a car horn beep, Ms. Howard got out of bed and went to the window. She stated that she saw the front of a small, gray car and a person sitting inside the car. Ms. Howard then called her fiancé to tell him to hurry home. Ms. Howard testified that she heard the car horn blow again, so she went back to the window. She could now see the person inside the car because the interior light was on. Ms. Howard then saw the man get out of the car and wipe the exterior and then open the passenger door. At this point, she stated she saw an arm "flop" out of the car. Ms. Howard was frightened and again called her fiancé to tell him to come home. Ms. Howard testified that the person she saw slumped over in the car was definitely deceased. Ms. Howard identified Defendant from a photo line-up and in court as the man she observed get out of the car and wipe down the car's exterior.

Eddie Grandberry, Ms. Howard's fiancé, testified that he spoke to Defendant in the parking lot when he (Mr. Grandberry) arrived home. Mr. Grandberry told Defendant he could not park the car in the lot and that he would have to move it. Mr. Grandberry testified that the Defendant complied and drove away. Mr. Grandberry also identified Defendant in a photo array and in court.

Officer Ken Fox responded to a 911 call about a dead person in a car. The car was located outside Ms. Howard's bedroom window and she stated from her bedroom she could "see straight through the car." He found the victim's body slumped over in the front seat of a gray Ford Focus. Officer Fox found cash, marijuana, and a CD player in the vehicle.

Dr. O.C. Smith performed the autopsy and testified that the victim was shot twice. One of the shots was fatal. Dr. Smith testified that the victim tested positive for cocaine and his blood alcohol content was .14.

On January 12, 2003, Sergeants Eric Hutchinson and Timothy Sims took Defendant's statement. Sergeant Sims passed away before the trial so only Sergeant Hutchinson testified. Sergeant Hutchinson testified that Defendant was cooperative and expressed remorse. Sergeant Hutchinson read Defendant's statement into evidence. In his statement, Defendant told the officers that he was responsible for the victim's death and that he was trying to protect himself. Defendant also said that he knew the victim kept a gun under his seat and he believed that the victim was reaching for it. Defendant then stated that he and the victim began "tussling and arguing" in the car and

that the victim grabbed for Defendant's gun. During this altercation the gun went off twice. Defendant said he jumped out and ran away, but then returned to the car and found the victim alive. Defendant stated that he panicked and drove the car into another parking lot and called Ms. Cash for a ride. Defendant told the officers he was scared to call 911. Defendant ended his statement by saying he was sorry and that he was "just trying to protect myself."

Defendant did not testify at trial, nor did he offer any other proof.

Id. at *1-2.

The Petitioner filed a petition for post-conviction relief on August 20, 2008. Counsel was appointed for the Petitioner, and an amended petition was filed. The Petitioner asserted that he did not receive the effective assistance of counsel at trial. As specific grounds for relief, the Petitioner made the following allegations: (1) trial counsel was ineffective for failing to argue in a motion to suppress hearing that the Petitioner was arrested without probable cause; (2) trial counsel was ineffective for failing to seek suppression of the identification testimony of Tammie Howard and Eddie Grandberry; (3) trial counsel was ineffective for failing to subpoena Tammie Howard's medical records; (4) trial counsel was ineffective for failing to retain a forensic pathologist; (5) trial counsel was ineffective for failing to present evidence of the victim's past acts of violence to corroborate the defense theory of self-defense; (6) trial counsel was ineffective for failing to investigate the case and for failing to call witnesses beneficial to the defense; (7) trial counsel was ineffective for failing to adequately prepare for trial; (8) trial counsel was ineffective for failing to adequately research legal issues; and (9) trial counsel was ineffective for failing to communicate with the Petitioner. In a second amended petition, the Petitioner elaborated on his previous allegations and, additionally, alleged that trial counsel was ineffective for failing to argue in a motion to suppress hearing that the Petitioner was subjected to a custodial interrogation prior to being advised of his Miranda rights.[1] At the outset of his post-conviction hearing, the Petitioner added two additional ineffective assistance claims—that

---

[1] See Miranda v. Arizona, 384 U.S. 436 (1966).

trial counsel failed to introduce evidence about the victim's violent reputation[2] and that trial counsel failed to adequately cross-examine Tammie Howard.

A hearing began on July 30, 2009, and continued on August 14, 2009.[3] Harry Jarrett testified that he was good friends with the Petitioner. Mr. Jarrett had met the victim, who he knew as "Rico," several times through mutual friends. When asked about the victim's reputation, Mr. Jarrett stated, "Thug, gangster, not well thought of at all." Mr. Jarrett said that he spoke with trial counsel before the Petitioner's trial. A picture of the victim was shown to Mr. Jarrett while on the stand, but he could not identify him.

On cross-examination, Mr. Jarrett confirmed that he testified at the Petitioner's trial, testifying in front of the jury that he feared for the Petitioner's life when the Petitioner rode away with the victim. Mr. Jarrett confirmed that he did not see any weapons on the evening of the fight at the bar. After the shooting, Mr. Jarrett met with the Petitioner who was crying and who kept apologizing.

Mr. Jarrett's wife, Lisa Jarrett, testified next. She also said that she knew the victim through mutual friends and was familiar with his reputation. Mrs. Jarrett characterized the victim as "a street thug, a hood rat, somebody that I should not be around." Mrs. Jarrett testified that she met with trial counsel prior to the Petitioner's trial and that she informed trial counsel of the victim's bad reputation.

On cross-examination, Mrs. Jarrett confirmed that she also testified at the Petitioner's trial. According to Mrs. Jarrett, she stated in front of the jury the she heard the victim threaten to kill the Petitioner on the evening in question.

---

[2] The State argues that this issue is waived because the Petitioner did not include it in his original or amended petitions. However, at the outset of the hearing, counsel moved to amend the petition to include these two new grounds. The State did not object until later in the hearing when the Petitioner began to offer testimony about the victim's reputation. The post-conviction court permitted the petition to be amended, noting that record was already developed on the subject, thus enabling the court to "get a good picture of it." Although the post-conviction court permitted the petition to be amended, the court did not directly address the issue of the victim's reputation for violence in its order denying relief. Nonetheless, the post-conviction court did address the victim's prior acts of violence as possible evidence to corroborate the defense theory of self-defense in its order. Given that prior acts of violence and a reputation for violence are both types of character evidence, and because the record is sufficient to address the issue, we decline to consider the issue waived.

[3] We will confine our narrative of the post-conviction hearing facts to evidence relevant to the issues presented on appeal. Much of the testimony at the hearing concerned the Petitioner's other allegations of ineffective assistance.

Trial counsel testified that he worked for the Shelby County Public Defender's Office and had been a practicing attorney since 1982. He reviewed all of the discovery in the Petitioner's case and provided the Petitioner with a copy. He met with the Petitioner frequently, at least ten visits in the jail and "enumerable conferences off the courtroom in the conference rooms." He also stated that he communicated with the Petitioner by mail at least ten to twelve times and that he provided the Petitioner with any additional information he received from the State.

Trial counsel said that he did not seek funds for an independent forensic pathologist because he saw no reason to as "[t]he cause of death was absolutely clear." Trial counsel met with the medical examiner and discussed the victim's injuries. He did not believe he could show the requirement of a "particularized need" in order to receive State-funded expert services; he saw no reason to believe that the medical examiner's conclusions were incorrect.

When asked if he made any effort to investigate the victim's past, trial counsel said that he obtained the victim's arrest history, which showed several convictions for driving on a revoked license and public intoxication. Trial counsel recalled a Class E felony on the victim's record—a prohibited weapon offense. Trial counsel was shown an affidavit of complaint involving an assault by the victim and was informed that the victim pleaded guilty to the charge; trial counsel was not aware of the conviction.

When asked if he talked to witnesses about the victim's past, he stated that he interviewed the witnesses about what information they had about the facts of the case. He did not remember Mrs. Jarrett ever calling the victim a "thug" and such was not reflected in his notes. According to trial counsel, both Jarretts testified at the Petitioner's trial that they heard the victim threaten the Petitioner and that they feared for the Petitioner's life on the evening in question. Mrs. Jarrett actually "blurted out" that she heard the victim say to the Petitioner, "I'm going to kill you." Trial counsel made a strategic decision to rely solely on the victim's bad acts on the evening in question, rather than rehash his past behavior in front of the jury. Trial counsel said that the Petitioner was actually good friends with the victim; on the evening in question, the two were celebrating their respective birthdays together. Trial counsel opined that any evidence about the victim's past acts of violence would not have changed the outcome of the Petitioner's trial, noting that the victim suffered two gunshot wounds, one in the back, which belied the allegation of a "tussle." Trial counsel did not remember the Petitioner ever requesting that he interview additional individuals.

On cross examination, trial counsel confirmed that the defense theory was that the Petitioner acted in self-defense, that identification was not an issue. Trial counsel encouraged the Petitioner to take the stand at trial, but the Petitioner chose not to testify. Although trial counsel knew of the victim's history, the Petitioner appeared to have no

knowledge of the victim's reputation or past violent behavior, and trial counsel was not "going to create a defense by suggesting it to him."

The Petitioner testified that he only met with trial counsel a total of about eight to ten times during the four years he was incarcerated prior to his trial. He told trial counsel about the victim—that they grew up together in the same area of town, that he knew of "a little few incidents in the neighborhood" involving the victim, and that the victim was charged in a drug case and in a gun case. He asked trial counsel to get the victim's entire criminal record. He also asked trial counsel to interview his brother, Demetrius Jones, but trial counsel did not.

The Petitioner requested trial counsel to get an independent forensic pathologist "to go against" the medical examiner. Based upon a "little ordeal" the medical examiner was going through publicly, the Petitioner assumed that he "would have been a State witness saying whatever the State wanting [sic] him to say."

Demetrius Jones stated that he had known the victim for about ten years from "staying around the neighborhood." He witnessed the victim engage in violent behavior on a couple of occasions. On one such occasion in 2001, the victim and another man started to "wrestle with each other," but the other man was stronger than the victim, and the victim became upset. After leaving the scene of the fight, the victim returned with an assault rifle and threatened the man who had gone inside his mother's house. The man never came outside; the victim laid the assault rifle down and left. Mr. Jones further testified that the victim drank a lot and became very aggressive when he was under the influence of alcohol and drugs. According to Mr. Jones, the victim was "not a fighter," but his "character changed" once he became intoxicated. Mr. Jones stated that he never met with trial counsel.

Will Huttig also testified. Mr. Huttig lived in the same neighborhood as the victim and knew him "through other friends." On one occasion, Mr. Huttig witnessed the victim get into a fight. According to Mr. Huttig, the victim would answer his door armed, and the victim kept an AK-47 on his porch. Mr. Huttig opined that the victim was a violent person. As for the victim's reputation, Mr. Huttig said that the victim was a drug dealer and "was a bad drunk." He did not speak with trial counsel at any point.

After reviewing the evidence presented, the post-conviction court denied relief by written order. The post-conviction court found that the Petitioner did not prove his factual assertions by clear and convincing evidence and did not establish that trial counsel was ineffective. This appeal followed.

**Analysis**

The Petitioner essentially raises two challenges in this appeal: one aimed at trial counsel's failure to present evidence of the victim's prior violent acts and of the victim's reputation for violence and the other aimed at trial counsel's failure to retain the services of an independent forensic pathologist.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. To demonstrate prejudice, a defendant must show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id. (emphasis in original).

**I. Prior Bad Acts and Reputation Testimony**

The Petitioner complains that the post-conviction court erred by determining that trial counsel was not ineffective for failing to call witnesses to establish the victim's reputation for violence and to detail certain prior bad acts by the Petitioner. At the post-conviction hearing, the Petitioner presented four witnesses who testified to the victim's violent reputation and/or who had witnessed prior violent acts by the victim. Trial counsel testified that he and his staff interviewed witnesses asking them about their knowledge of the case. Trial counsel said he believed the victim's actions on the evening of his death, in addition to the Petitioner's statement, were sufficient to establish the defense of self-defense. The Petitioner and the victim were good friends; the Petitioner neither indicated to trial counsel that he found the victim to be a violent person nor alerted trial counsel to the victim's past violent behavior. Trial counsel said that the Petitioner never requested that he interview additional individuals. Moreover, we agree with the State that the testimony offered by the Petitioner at the post-conviction hearing did not offer particularly strong evidence of the victim's violent nature.

The post-conviction court found that trial counsel's decision not to put on evidence about prior bad acts by the victim or about his violent reputation was a tactical decision not subject to hindsight review, and that his conduct in that regard was within the standards expected of defense counsel. In making this decision, the post-conviction court relied upon trial counsel's testimony that he believed the bad acts of the victim on the evening of his death were enough to corroborate the defense theory that the Petitioner was acting in self-defense and the fact that witnesses at trial testified that the victim threatened to kill the Petitioner on the evening in question. The post-conviction court obviously accredited trial counsel's testimony over that of the Petitioner. This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings.

Also, as noted in the Petitioner's direct appeal, the fact that there were two gunshots permitted an inference by the jury that the shooting did not occur as a result of a "tussle." Ford, 2008 WL 2219395, at *3. Lastly, Petitioner admitted in his statement to police that the victim was alive after the shooting and that he did not call 911 or seek other assistance. Id. Based upon our review, we conclude that the evidence does not preponderate against the

post-conviction court's finding that trial counsel's assistance in this regard was not ineffective. The Petitioner is not entitled to relief on this issue.

## II. Forensic Expert
### A. Trial

The issue presented by the Petitioner is whether trial counsel's assistance was ineffective for failing to request forensic expert assistance to challenge the medical examiner's report. Noting trial counsel's testimony that he did not retain a forensic pathologist due to the "clearness of the victim's death," the post-conviction court again found trial counsel's decision to be sound strategy. Trial counsel met with the medical examiner and was satisfied with his findings. He stated that, even if he had requested an expert, he would not have been able to demonstrate the "particularized need" necessary to secure State funding. Moreover, the Petitioner did not present any evidence at the post-conviction hearing to show what, if any, forensics testimony would have benefitted his defense or, if such evidence existed, that it would have affected the outcome of the trial. Neither a trial judge nor an appellate court can speculate as to what a potential witness might have testified. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We agree with the post-conviction court that the Petitioner failed to demonstrate trial counsel was ineffective.

### B. Post-conviction proceedings

Post-conviction counsel attempted to secure funds for a forensic pathologist at the post-conviction stage in order to prove the Petitioner's ineffectiveness claim. The post-conviction court denied the motion. On appeal, the Petitioner contends that the post-conviction court erred in denying his request for expert funds. He submits that the denial of funding violated his right to due process and constituted cruel and unusual punishment.

The Petitioner acknowledges that his argument is contrary to the law in Tennessee. The Tennessee Supreme Court Rules clearly prohibit the authorization of expert services in non-capital post-conviction proceedings. Tenn. Sup. Ct. R. 13 § 5(a)(2); see also Tenn. Code Ann. § 40-17-207; Davis v. State, 912 S.W.2d 689, 696-97 (Tenn. 1995). Further, Petitioner's argument, that despite well-settled law, a denial of expert funding denies him fundamental due process rights, has already been addressed by a panel of this Court. In Asata Lowe v. State, No. E2006-02028-CCA-R3-PC, 2008 WL 631169, at *20-21 (Tenn. Crim. App., Knoxville, Mar. 10, 2008), this Court noted the prohibition for expert services in non-capital post-conviction proceedings and determined that for the Court to analyze the petitioner's claim, she "was required at a minimum to make a threshold showing that such an expert exists. This showing would demonstrate that the claim that an expert [would have helped the defense was] more than mere speculation. We cannot conclude that the Due Process Clause was violated based on mere conjecture." Id. at *21. The same analysis applies herein. Other than statements of post-conviction counsel and the assertions of the

Petitioner, there is no proof in the record that any expert existed whose testimony would have refuted the medical examiner's report. Accordingly, the post-conviction court properly denied the request for an expert. See also Wayne Lydell Holt v. State, No. M2009-00933-CCA-R3-PC, 2010 WL 2867185, at *6 (Tenn. Crim. App., Nashville, July 22, 2010).

**Conclusion**

Based upon the foregoing reasoning and authorities, we conclude that the Petitioner has not shown he is entitled to relief on grounds of ineffective assistance of counsel. The judgment of Shelby County Criminal Court denying post-conviction relief is affirmed.

_____
DAVID H. WELLES, JUDGE