# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### MARCH SESSION, 1998

FILED

July 2, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| RICKY RUTLEDGE, | ) | C.C.A. NO. 01C01-9706-CC-00201 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | BEDFORD COUNTY |
| VS. | ) | |
| | ) | HON. WILLIAM CHARLES LEE |
| STATE OF TENNESSEE, | ) | JUDGE |
| | ) | |
| Appellee. | ) | (Post-Conviction) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CRIMINAL COURT OF BEDFORD COUNTY

FOR THE APPELLANT:

ROBERT H. STOVALL, JR.
P.O. Box 160
Charlotte, TN 37036

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

CLINTON J. MORGAN
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243-0493

MIKE McCOWN
District Attorney General

ROBERT G. CRIGLER
Assistant District Attorney General
One Public Square, Suite 300
Shelbyville, TN

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Petitioner, Ricky Rutledge, appeals from the order of the trial court dismissing his Petition for Post Conviction Relief. Petitioner sought post-conviction relief asserting that he received ineffective assistance of counsel prior to entering his plea of guilt. In addition, Petitioner maintains that because of counsel's deficient representation, his guilty plea was not knowingly, intelligently, and voluntarily given. Following an evidentiary hearing, the trial court denied relief and we affirm.

In April 1990, Petitioner was indicted on six counts of aggravated rape[1] and one count of aggravated sexual battery. The victim as set forth in the indictment was the 9-year-old daughter of the Defendant. Petitioner entered a "best interest" guilty plea on December 17, 1990, to the first count of aggravated rape; and the State retired all other counts of this indictment as well as a prior indictment for multiple counts of passing worthless checks. Judge Charles Lee of the Circuit Court for Bedford County sentenced Petitioner to twenty-five years as a Range I standard offender.

Petitioner filed a pro se Petition for Post Conviction Relief in the Circuit Court for Bedford County on November 22, 1993; the trial court appointed counsel on March 24, 1994; and an amended Petition was filed with the court on

---

[1] Petitioner was indicted for five counts of aggravated rape in violation of Tennessee Code Annotated § 39-2-603 (1982 & Supp. 1988), and one count of aggravated rape in violation of Tennessee Code Annotated § 39-13-502 (1990).

May 26, 1994. The trial court held an evidentiary hearing over the course of May 26 and 27, 1994, and dismissed the Petition at the conclusion of this hearing. On February 17, 1997, the trial court entered its Order Dismissing Post Conviction Petition, from which the Petitioner appeals.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

The first issue for review is whether Petitioner suffered ineffective assistance of counsel in violation of his Sixth Amendment right to counsel.[2] The Petition presents several claims for post-conviction relief based upon ineffective assistance of counsel, yet only certain of these claims were pursued at the evidentiary hearing. Because the Petitioner bears the burden of proving his factual allegations in this proceeding, Tenn. Code Ann. § 40-30-210(f) (1997), we will address only those claims for which proof was offered.

### A. Failure to Investigate

First, Petitioner asserts that counsel failed to adequately investigate his case—specifically, by failing to determine the meaning and significance of a diagnosis made following a medical examination of the victim. To be entitled to post-conviction relief on the basis of ineffective assistance of counsel, Petitioner must show both that his counsel's representation was "deficient" and that "the

---

[2] The State raises two "preliminary" issues that may be addressed here. First, the State argues that this Court should affirm "instanter" the decision of the trial court, due to the Petitioner's failure to prepare a complete record for appeal. The trial court's findings of fact, incorporated by reference in its Order, were not attached to the Order in preparation for the hearing of this appeal. The record reflects, however, that the State did not respond to a motion by Petitioner to permit supplementation of the record pursuant to Tennessee Rule of Appellate Procedure 24(e); and the motion was granted on October 1, 1997.

Second, the State urges that the Petitioner's Amendment to Petition for Post-Conviction Relief be stricken from the record as an "unauthorized pleading." Although this pleading was not signed by appointed counsel, it was signed by Petitioner himself; and in the interest of justice, we choose to consider its allegations, noting the objection by the State.

deficient performance prejudiced the defense." <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Because Petitioner has failed to satisfy either prong, this claim lacks merit.

This Court has been provided extensive guidance by which to review contentions that conduct was below competence when judged by "an objective standard of reasonableness." <u>See id.</u> at 688; <u>see also</u> <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975) ("We believe a better standard . . . is simply whether the advice given, or the services rendered by the attorney, are within the range of competence demanded of attorneys in criminal cases."). We begin with the principle that findings of fact made by the trial court following Petitioner's evidentiary hearing are conclusive and binding on this Court unless the evidence preponderates against those findings. <u>Cooper v. State</u>, 849 S.W.2d 744, 746 (Tenn. 1993) (citing <u>Butler v. State</u>, 789 S.W.2d 898, 899 (Tenn. 1990)). In this case, the trial court was "convinced, based upon his demeanor and based upon his answers to the questions," that John Norton, one of Petitioner's prior attorneys, was "familiar with those terms of art" that Petitioner now claims were not investigated. We hold that the evidence does not preponderate against this determination and we examine the evidence with respect to failure to investigate the medical diagnosis of the victim.

To support his first claim, Petitioner entered two exhibits into the record of the evidentiary hearing. The first exhibit was a letter from Dr. Frank Jayakody of Shelbyville to Brenda Bramlett, Petitioner's other attorney at the time of his guilty

plea. This letter stated that upon examination of the victim on February 27, 1990, Dr. Jayakody found "no abrasions or discoloration in [the victim's] perineal area and her hymen appeared intact." Furthermore, "[a]ttempts to insert a pediatric speculum into her vagina was [sic] unsuccessful due to pain," and "based upon her examination . . . I could not conclusively say that any abuse had occurred." The second exhibit relevant to this issue, a "Child Abuse Bodygram" of the victim signed by Registered Nurse LeeAnne McInnis at Metropolitan General Hospital in Nashville, revealed "Findings [consistent with] past history of trauma to hymen=category 3 findings."

The crux of Petitioner's argument is that Brenda Bramlett and John Norton should have researched the term "category 3 findings" to determine whether such trauma can result from causes other than sexual abuse. Specifically, Petitioner argues that Bramlett and Norton could have discovered that Dr. Jayakody's frustrated attempts to insert a pediatric speculum into the victim three days earlier[3] were within the range of potential causes. At the evidentiary hearing, however, Petitioner presented no evidence to support his hypothesis; counsel merely motioned to continue the proceeding until such time as evidence could be presented.[4]

---

[3] Though the bodygram is not dated, the State does not seem to dispute the date of the victim's examination at General Hospital.

[4] Petitioner recounted difficulty in locating Nurse McInnis for interview and requested that the trial court provide funds for an expert. We note that our Supreme Court "is of the opinion that the state is not required to provide expert assistance to indigent non-capital post-conviction petitioners." Davis v. State, 912 S.W.2d 689, 696-97 (Tenn. 1995); and we accept the decision of the trial court to deny Petitioner's request for an expert as correct.

As noted by this Court in Black v. State, 794 S.W.2d 752 (Tenn. Crim. App. 1990),

> When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of the defense, these witnesses should be presented by the petitioner at the evidentiary hearing. . . . It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel. . . . In short, if a petitioner is able to establish that defense counsel was deficient in the investigation of the facts . . ., the petitioner is not entitled to relief from his conviction on this ground unless he can produce a material witness who (a) could have been found by reasonable investigation and (b) would have testified favorably in support of his defense if called.

Id. at 757-58 (footnote omitted). Although Black involved a conviction after trial, its import is also well-taken in the context of guilty pleas. Petitioner bears the burden to demonstrate (1) that Bramlett and Norton failed to investigate "category 3 findings" of trauma and such failure was unreasonable "considering all the circumstances," Strickland, 466 U.S. at 688; and if so, (2) that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Petitioner must do more than merely present evidence tending to show incompetent representation and prejudice; he must prove his factual allegations by a preponderance of the evidence. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App., 1988).[5]

---

[5]For post-conviction petitions filed after May 9, 1995, petitioners have the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f).

As recognized, Petitioner has presented no affirmative evidence on this issue other than to show on cross examination that Norton never spoke with Dr. Jayakody or Nurse McInnis and did not investigate their findings, and that Bramlett only spoke with Nurse McInnis by telephone. By explanation, Norton testified that he did not speak with Dr. Jayakody because, in his experience, if a "doctor really wants his opinion to be credible, he puts everything in it that he did, and you get back a report" that is "graphic" and detailed. For this reason, Norton stated that he "did not have any reason to believe that [Dr. Jayakody] would have been any more enlightening in person than he was on the written page." In addition, Norton testified that he did not speak with Nurse McInnis because he presumed she would not change her opinion and because he believed, even from his admittedly limited medical knowledge, that Dr. Jayakody could not have caused the injury that Nurse McInnis found.

Petitioner's other counsel, Brenda Bramlett, testified at the evidentiary hearing that while she had not spoken with Dr. Jayakody personally, she had consulted another doctor about Jayakody's findings. This consultant doctor spoke personally with Dr. Jayakody and subsequently offered Bramlett her opinion—that the victim's injury "could not have been caused by anything other than abuse" and that the location of the scarring was "consistent with what you find in sexual abuse cases." Furthermore, Bramlett instructed her investigator to personally interview Nurse McInnis, and the investigator complied and reported back to Bramlett.

With respect to rationalization of attorney conduct in an ineffective assistance of counsel case, the Supreme Court of the United States instructed,

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Strickland v. Washington, 466 U.S. 668, 688 (1984). The courts of this state also have long "recognized that it is not our function to 'second-guess' tactical and strategical choices pertaining to defense matters or measure a defense attorney's representation by '20-20 hindsight' when deciding the effectiveness of trial counsel." Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993) (quoting Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)). We find counsel's conduct to be reasonable under the circumstances.

As the State commented at the evidentiary hearing, "There are other sources of research that [sic] the medical books, other doctors, criminal defenses association resources, where [present counsel] could have researched this matter himself and not come into [the] hearing saying, 'Well, it may have, it could have been.'" The trial court agreed, finding that "there has not been a showing to the Court that there would be the likelihood that would assist the Defendant." In the absence of sufficient evidence to support either Strickland prong, and with the presence of evidence supporting reasonable conduct by counsel, we must hold that the evidence does not preponderate against the trial court's finding of

no ineffective assistance of counsel based upon failure to investigate the medical evidence.

### B. Failure to Advise/Misinformation

Petitioner next claims that he suffered ineffective assistance of counsel because prior counsel incorrectly informed him that he would be released from incarceration after serving seven and one-half to eight years of his sentence with good behavior. As noted above, Petitioner was sentenced to twenty-five years as a Range I offender. Eligibility for parole arises for Range I offenders after completion of thirty percent of the actual sentence imposed. Tenn. Code Ann. § 40-35-501(c) (1990). Petitioner testified at the evidentiary hearing that he will not be released from incarceration until after service of eighteen years.

Although the reason for prolonged confinement is not presented in Petitioner's brief or his testimony, we assume it results from Tennessee Code Annotated § 40-35-503(c) (1990), which reads: "No person convicted of a sex crime shall be released on parole until a psychiatrist or licensed clinical psychologist has examined and evaluated such inmate and certified that, to a reasonable medical certainty, the inmate does not pose the likelihood of committing sexual assaults upon release from confinement." Id. For whatever reason, there are two distinct issues that we must consider.

First, did counsel promise or otherwise misinform Petitioner regarding the actual date he would be released? The trial court specifically found that they did not: "[T]he Court credits the witnesses for the State, or credits the witnesses for

the State in that no promises were made to the Defendant that he would be released, guaranteed at a particular time." Upon examination of the testimony at Petitioner's evidentiary hearing, we conclude that the evidence does not preponderate against this finding. Both Norton and Bramlett testified unequivocally they did not guarantee or represent to Petitioner that he would be released at any certain time. Moreover, they testified they did not *indicate* to him that he would be released at a certain time, although they agreed that he was told he would be "eligible for parole" after serving thirty percent of his sentence. Furthermore, the transcript of Petitioner's plea acceptance hearing reflects the following colloquy between the trial judge and Petitioner:

> THE COURT: Mr. Rutledge, has anyone made any threats against you, other than to prosecute you, to make you plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anyone made any promises to you other than those announced in court today to make you plead guilty?
>
> THE DEFENDANT: No, sir. I just asked for one thing, and he told me he couldn't do that.
>
> THE COURT: Pardon me?
>
> THE DEFENDANT: I asked him for one thing, and he said he couldn't do that. I wanted one more thing in the plea bargain, and he couldn't come about that. I asked him -- to report myself in after the holidays to the Bedford County Sheriff's Office --
>
> THE COURT: That's a decision that is left up to the Court and not to the --
>
> THE DEFENDANT: -- and he said he couldn't make that arrangement. That's the only thing.

Based upon this evidence, we conclude (1) that Petitioner was not promised or given the information that he would be released after serving seven and one-half

years or any other specific length of his sentence, and (2) that this Court has no basis upon which to determine the information provided to Petitioner—that he would be "eligible for release" after serving thirty percent—was incorrect.[6]

The second question to consider is: Did counsel's failure to advise Petitioner that he would *not* be released after serving thirty percent of his sentence constitute ineffective assistance of counsel? Initially, we note that Petitioner has failed to provide evidence other than his own testimony of inadmissible hearsay statements by Department of Correction officers to show that he will indeed not be released after having served thirty percent of his sentence, although the trial court agreed that release at that time would be highly unlikely. Next, Petitioner testified he was *actually* advised prior to pleading guilty that he would be required to complete a sex offenders' treatment program as a condition of his parole.

This Court has previously determined that "silence by counsel" on "any collateral consequences of a plea" does not "fall below the range of competence demanded of attorneys in criminal cases." Adkins v. State, 911 S.W.2d 334, 350 (Tenn. Crim. App. 1994). Specifically, failure of counsel to discuss parole eligibility or the parole condition of successfully completing a sexual offender treatment program does not constitute ineffective assistance of counsel. Wade v. State, 914 S.W.2d 97, 103-04 (Tenn. Crim. App. 1995); Wilson v. State, 899

_____

[6] This is not a case, as in Hill v. Lockhart, 474 U.S. 52, 54-55 (1985), in which counsel has given erroneous advice. See id. (counsel told defendant he would be eligible for parole after serving one-third of sentence, when defendant was actually not eligible for parole prior to serving one-half of his sentence); see also Donald F. Walton v. State, C.C.A. No. 01C01-9603-CR-00110, Davidson County (Tenn. Crim. App., Nashville, Jan. 30, 1997) (finding that "erroneous advice regarding parole that induces a defendant to forego his or her right to a jury trial can be used to establish a claim for ineffective assistance"). As just discussed, the trial court found that Petitioner was advised only that he would be eligible for parole at thirty percent. Although Petitioner may have other parole conditions such as psychological evaluation, he remains "eligible for parole" at thirty percent.

S.W.2d 648, 652-53 (Tenn. Crim. App. 1994). In light of these decisions, we cannot conclude that counsel had a duty to advise Petitioner of consequences even *more* collateral and certainly indefinite—the length of time it could take to fulfill conditions of parole. We conclude that Petitioner has not suffered ineffective assistance of counsel based upon misadvice or failure to advise regarding conditions of parole eligibility.

## II. VOLUNTARY AND INTELLIGENT PLEA

Because we have determined that Petitioner's ineffective assistance of counsel claims lack merit, because ineffective assistance was the only basis upon which he claimed his plea was involuntary or unintelligent, and because we find no other basis to conclude that his plea was not rendered voluntarily, we hold that this claim must also fail.

The judgment of the trial court denying the Petitioner post-conviction relief is affirmed.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOSEPH M. TIPTON, JUDGE

_____
JOE G. RILEY, JUDGE

-12-